Jose Velez
3936 S. Semoran Blvd #317
Orlando, FL 32822
Tel.: (407) 456-4880
Fax Number: n/a
Email:  jvelez2@protonmail.com
*Plaintiff In Propria Persona*

FILED
CLERK, U.S. DISTRICT COURT

JAN -2 2019

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JOSE VELEZ,

        Plaintiff

   vs.

DUCKHAUS, INC., THE ATTIC, INC., DJC FOODS INC., Does 1-10, inclusive.

        Defendant(s)

Case No.:

**CV19-00023** JFN-RAOx

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

PAID

JAN - 2 2019

Clerk, US District Court
COURT 4612

Plaintiff, JOSE VELEZ hereby complains and alleges as follows:

**NATURE OF THE ACTION**

1.    This is an action seeking to remedy unlawful discrimination by the Defendants against the Plaintiff in the Defendants' place of public accommodation in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. (the "ADA") and the Unruh Civil Rights Act, Civil Code § 51, et seq. (the "Unruh Act"). *see also* <u>Langer v. San Pedro Street Properties, LLC</u>, Civil No. 2: 17-cv-08780-ODW (AFM) (C.D. Cal. Nov. 8, 2018).

RECEIVED
CLERK,U.S. DISTRICT COURT

DEC 31 2018

CENTRAL DISTRICT OF CA
BY                    DEPUTY

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES - 1

2.     This lawsuit is necessary because the Defendants failed to remove accessibility barriers and because the Defendants continue to maintain barriers in violation of the ADA and the Unruh Act as described herein. Before institution of this civil action, Plaintiff sent a letter to the defendant without any monetary demand, but an invitation to discuss compliance with the ADA.

3.     Plaintiff personally encountered the barriers in violation of the ADA and the Unruh Act described herein and took photos of the barriers with his iPhone. The metadata of the digital images confirm the geolocation of the images, where the barriers are located. The metadata of the images will confirm the date of Plaintiff's physical presence at the facility. Plaintiff physical presence at the facility and encounter with the barriers is also corroborated because Plaintiff personally paid with his credit card at the defendants' facility and his credit card statement, as well as defendants' bank statement, will confirm this information. A purchase receipt is available for inspection.

**PARTIES**

4.     Plaintiff, Jose Velez, is a person with mobility-related limitations because morbid obesity (approximate BMI: 44.4), a "disability" within the meaning of the ADA and the Unruh Act. Taylor v. Burlington N. R.R. Holdings Inc., 904 F.3d 846, (9th Cir. 2018). His additional weight on his frame makes it more difficult to breathe, walk, stand, and bend. Plaintiff also suffers difficulty in bending, kneeling, stooping, lifting and carrying. The problems with executing these basic physical tasks creates limitations in maintaining strength and mobility, as well as in performing basic activities of daily living. Plaintiff's increased body weight does interfere with his normal musculoskeletal function through a variety of kinetic and kinematic impairments, which causes impaired balance, abnormal gait patterns and increased incidence of muscle weakness. Because of this, Plaintiff is in

increased risk for falls. Plaintiff's gait is compromised through reduced velocity, cadence, step width, and step length, as well as stance duration. Problems with executing these basic physical tasks creates limitations in maintaining strength and mobility, as well as in performing basic activities of daily living. Plaintiff also uses an altered strategy for sit-to-stand (and vice versa) due to back pain, lack of strength, and lack of balance. Plaintiff's Morbid obesity is, by itself, a "disability" because it is a physical impairment: a condition that affects one or more body systems (neurological, musculoskeletal, respiratory, cardiovascular, ability to walk, stand, run, bend). Plaintiff's increased body weight in his body causes increased incidence of muscle weakness on his arms, which is a limitation for maintaining strength on his arms to, for example, reach an extremely high service counter, transferring to/from the toilet.

5.    The business establishments at issue in this complaint discriminated against Plaintiff and prevented Plaintiff from enjoying full and equal access thereto due to the existence of unlawful architectural barriers that violate the ADA as described in more detail herein.

6.    Defendant, DUCKHAUS, INC., owns, operates, or leases real property located at 5096 E. Pacific Coast Hwy, Long Beach, CA 90804. Defendant, THE ATTIC, INC., owns, operates, or leases real property located at 3441 E. Broadway, Long Beach, CA 90803. Defendant, DJC FOODS INC., owns, operates, or leases real property located at 4114 E. 3rd Street, Long Beach, CA 90814. These properties, collectively referred to as the "Subject Property," share common violations to the ADA unless otherwise indicated.

7.    The Subject Property is a facility open to the general public, a public accommodation, and a business establishment insofar as it provides goods and/or services to the general public.

8.    Defendant Does 1 through 10, inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to the Plaintiff. When their true names and capacities are ascertained, Plaintiff will amend this complaint by inserting their true names and capacities herein. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by those Defendants.

### JURISDICTION AND VENUE

9.    This Court has jurisdiction over the subject matter of this action pursuant 28 U.S.C. §§ 1331 and 1343(a)(3) and (a)(4) for violations of the ADA.

10.   This Court has supplemental jurisdiction over the state law claims alleged herein under the Unruh Act because the state law claim is an attendant and related cause of action that arises from the same nucleus of operative facts and arising out of the same transaction or occurrence as the federal law claims set forth herein.

11.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) based on the fact that the real property that is the subject of this action is located in this district and the Plaintiff's causes of action arose in this district.

### STATEMENT OF FACTS

12.   The ADA establishes different standards depending on when the facility was constructed and whether the facility has been altered since January 26, 1992. 28 C.F.R. §§ 36.401, 36.402. Existing facilities are required to remove barriers to access for persons with disabilities where removal is "readily achievable." 42 U.S.C. § 12182(b)(2) (A)(iv); 28 C.F.R. § 36.304. Facilities designed and constructed for first occupancy after January 26, 1993, must be accessible to persons with disabilities unless the entity can demonstrate that it is "structurally impractical." 42 U.S.C. § 12183(a).

Finally, alterations after January 26, 1992 must be made to ensure that, to the "maximum extent feasible," the altered portions of the facility are accessible. 28 C.F.R. § 36.402(a)(1).

13.     The original ADA design Standards were first published in 1991 and are set forth at 28 C.F.R. Part 36, Appendix A (the "1991 Standards"). The new ADA design Standards were first published in 2010 and are set forth at 28 C.F.R. Part 36, Subpart D (the "2010 Standards"). Both Standards are available at www.ada.gov. New construction and alterations commenced between September 15, 2010, and March 15, 2012, must comply with either the 1991 Standards or the 2010 Standards. All new construction and alterations commenced on or after March 15, 2012 must comply with the 2010 Standards.

14.     Plaintiff alleges on information and belief, the Subject Property was designed and constructed for first occupancy after January 26, 1993. *See* 28 C.F.R. § 36.401.

15.     Plaintiff alleges on information and belief, the Subject Property is located in a facility that was constructed after January 26, 1993. *See* 28 C.F.R. § 36.401.

16.     On information and belief, the Subject Property undergone alterations after January 26, 1992. The term "alterations" includes, but is not limited to, remodeling, renovation, rehabilitation, historic restoration, changes or rearrangement in structural parts or elements, and changes or rearrangement in the plan configuration of walls and full height partitions. Normal maintenance, re-roofing, painting or wallpapering, asbestos removal, or changes to mechanical or electrical systems are not alterations unless they affect the usability of the building or facility. *See* 28 C.F.R. § 36.402(b).

17.     Alternatively, if the Subject Property was *not* designed and constructed for first occupancy after January 26, 1993, the Subject Property is an existing

facility required to remove barriers to access for persons with disabilities where removal is "readily achievable." 42 U.S.C. § 12182(b)(2). The ADA provides that, when assessing whether barrier removal is "readily achievable," the factors to consider include the "resources" of the facility, 42 U.S.C. § 12181(9)(b), which includes "the overall financial resources of any parent corporation or entity," 28 C.F.R. § 36.104.

18.   Service counters, seating areas and restrooms are among the facilities, privileges and advantages offered by the Defendants to patrons of the Subject Property.

19.   The Subject Property is not fully accessible to Plaintiff or similarly situated persons with mobility disabilities to the barriers at the Subject Property.

20.   On information and belief, on or around December 4, 2018, and continuously from that time to the present, and currently, the property located at 5096 E. Pacific Coast Hwy, Long Beach, CA 90804 was not in compliance with the ADA:

    i.   Sales & service counter (2010 ADA Standards for Accessible Design – 904.4.1): All portions of the counter are higher than 36 inches above the floor. Possible readily achievable solution: lowering a section of the counter.

    ii.  Restroom – clearance around the water closet (2010 ADA Standards for Accessible Design – 606.5, 604.8.1.1): the clearance provided around the water closet does not measure at least 60 unobstructed inches from the side wall. There is a lavatory and a trash can too close to the toilet. Possible readily achievable solution: alter the room for clearance and establish policy to maintain the clear floor space near the toilet free of foreign objects. The image below shows the obstructions.



21.     On information and belief, on or around December 4, 2018, and continuously from that time to the present, and currently, the property located at 3441 E. Broadway, Long Beach, CA 90803 was not in compliance with the ADA:

    i. Sales & service counter (2010 ADA Standards for Accessible Design – 904.4.1): All portions of the counter are higher than 36 inches above the floor. Possible readily achievable solution: lowering a section of the counter.

    ii. Sales & service counter (2010 ADA Standards for Accessible Design – 904.4.1): No portion of the counter is at least 36 inches long because of obstructions to the counter with foreign objects. Possible readily achievable solution: establish policy to maintain the counter free of foreign objects. This involves the establishment of formal procedures and training to employees.

iii. Restrooms – clearance around the water closet (2010 ADA Standards for Accessible Design – 606.5, 604.8.1.1): the clearance provided around the water closet does not measure at least 60 unobstructed inches from the side wall. There is a white object between the toilet and the lavatory, as depicted in the image below. Possible readily achievable solution: alter the room for clearance or establish policy to maintain the clear floor space near the toilet free of foreign objects. These violations were identified in both restroom; one notable distinction of the restrooms is that in restroom 1, there is a brown cabinet in front of the toilet and there is no such cabinet in restroom 2. In both restrooms, however, there is a white cabinet with towels near the toilet, as depicted below.



iv. Restroom – clearance below lavatory. Under Section 306.2, no less than 17 inches and no greater than 25 inches of the clear floor space extend under the lavatory. Lavatory does not comply with Section 306.2.

22.    On information and belief, on or around December 4, 2018, and
continuously from that time to the present, and currently, the property
located at 4114 E. 3rd Street, Long Beach, CA 90814 was not in compliance
with the ADA:

i.   Restroom – clearance around the water closet (2010 ADA Standards
for Accessible Design – 606.5, 604.8.1.1): the clearance provided
around the water closet does not measure at least 60 unobstructed
inches from the side wall, as depicted in the image below. There are
foreign objects around the toilet. Possible readily achievable solution:
alter the room for clearance or establish policy to maintain the clear
floor space near the toilet free of foreign objects.

ii.  Restroom – pipes below the lavatory (2010 ADA Standards for
Accessible Design – 309.3, 308). The pipes below the lavatory and
not insulated or otherwise protected. Possible readily achievable
solution: install an inexpensive insulation below the lavatory.



23.     Maintenance and procedures to keep unobstructed clearance space is not structural in nature, it is a maintenance and policy issue that involves human discretion. It is well established that voluntary cessation of allegedly illegal conduct in the face of litigation does not deprive the court of the power to hear the case and issue injunctive relief. United States v. W.T. Grant, Co., 345 U.S. 629 (1953); see also County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979) (a dispute is not moot unless there is no expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged. No interim events have irrevocably eradicated the effects of the violation, because defendant is free, at his discretion and at any time, to fail to provide adequate maintenance and cause obstructions.

24.     The Plaintiff personally encountered architectural barriers that constitute ADA violations at the Subject Property and was denied full and equal access because of the violations.

25.     From that date to the present, the Plaintiff has been deterred from the Subject Property because of his knowledge of the existence of barriers that violate the ADA.

26.     The existence of access barriers and ADA violations at the Subject Property caused the Plaintiff unnecessary difficulty and discomfort.

27.     Plaintiff will return to Subject Property after obtaining injunctive relief for the purpose of monitoring the alterations at the property and enforcing any order entered by Court by, among others, testing the property for ADA compliance. see Civil Rights Education and Enforcement Center v. Hospitality Properties Trust, No. 16-16269 (9th Cir Aug. 7 2017) (holding that there is constitutional standing where a plaintiff's only motivation for visiting a facility is to test for ADA compliance).

28.     Plaintiff intents to visit the Subject Property and the business establishments thereat and intends to do so but will be deterred from doing so until the violations are cured.

29.     On information and belief, the violations identified above are readily achievable. The Department of Justice describes many of these kinds of barriers as presumptively readily achievable to remove and Plaintiff contends that the removal of them is easily accomplishable without much difficulty or expense. Likewise, even if strictly compliant barrier removal were not achievable, there are many kinds of alternative accommodations that could be made to provide a greater degree of accessibility to the Plaintiff and similarly situated persons with mobility disabilities.

30.     On information and belief, Plaintiff alleges that the failure to remove barriers has been knowing, willful and intentional because:

    i.   The barriers described herein are clearly visible and tend to be obvious even to a casual observer;

    ii.  Defendants historically failed to acknowledge that ADA compliance it not a one-time effort, but an ongoing obligation. They refused to promptly remove barriers or create alternative accommodations;

    iii. The Defendants operate the Subject Property and have control over conditions thereat. They have, and have had, the means and ability to make the necessary remediation of access barriers if they had ever so intended.

    iv.  Today, businesses have an obligation to become accessible, and there is a consequence if they do not: they could be sued. Defendant failed to be proactive and to provide access on its own. Defendant took a "wait and see" attitude. After 28 years since the ADA was enacted on July 26, 1990, Defendant was expected to comply with its legal obligations.

v. Defendant ignores the daily experience of thousands of people with disabilities who cannot shop, transact personal business, visit the doctor, or enjoy recreation like most people take for granted, because so many public accommodations across the country, like defendants, have ignored the reasonable requirements of the ADA. The ADA is the difference between participation and exclusion on a daily basis.

vi. Plaintiff was not required to provide a written notice of the accessibility issues. No other civil rights law permits businesses to discriminate without consequence unless and until the victims of discrimination notify the business that it has violated the law. The ADA does not place the heaviest burden for ending discrimination on the very people the law is there to protect.

vii. The ADA is already very carefully crafted to take the needs of business owners into account. Compliance is simply not burdensome. The careful compromise originally designed by a bipartisan Congress in 1990, provides that existing businesses are only required to provide access when doing so is readily achievable. Establishing and running a business necessitates compliance with many laws and rules—that is the cost of doing business. It is unthinkable that we would delay or eliminate consequences for small businesses that failed to pay taxes or meet health and safety codes. Violating the rights of people with disabilities should be treated no differently

viii. There are extensive federal efforts to educate business owners about their ADA obligations, including the in-depth DOJ ADA website (**ada.gov**), the DOJ ADA hotline, extensive DOJ technical assistance materials, and the ten federally-funded regional ADA Centers that provide in-depth resources and training in every state (**adata.org**). Yet

defendant have made no meaningful, proactive effort to comply with the ADA.

ix. Defendants failed to acknowledge that the ADA accessibility standards are extremely important. They are not minor details or picky rules, but rather, are essential to ensure true accessibility. A doorway that is too narrow can be the difference between accessing a business or not. A too-short bathroom grab bar can be the difference between using a restroom or being forced to go without a restroom. That said, it is important to point out that to impose liability under the ADA, the barrier does not need to completely preclude plaintiff from entering or using the facility; it need only *interfere* with the plaintiff's full and equal enjoyment of the facility. See <u>Lobato v. Gomez</u>, Civil No. 15-0686 (E.D. Cal. Oct. 31, 2016); <u>Moeller v. Taco Bell Corp.</u>, 816 F.Supp.2d 831, 848 (N.D.Cal.2011) (citing <u>Doran v. 7-Eleven Inc.</u>, 524 F.3d 1034, 1041 n. 4 (9th Cir.2008) (discussing that the ADA "does not limit its antidiscrimination mandate to barriers that completely prohibit access.")). "Because the ADAAG establishes the technical standards required for `full and equal enjoyment,' if a barrier violating the ADAAG relates to a plaintiff's disability, it will impair the plaintiff's full and equal access, which constitutes `discrimination' under the ADA, thereby violating the ADA." <u>Chapman v. Pier 1 Imports (U.S.) Inc.</u>, 631 F.3d 939, 947 (9th Cir.2011). s

x. People with disabilities are known to experience a loss of dignity, independence, personhood and pride associated with segregation and lack of access to public accommodations. *see* Kevin I. Coco, <u>Beyond the Price Tag: An Economic Analysis of Title III of the Americans with Disabilities Act</u>, 20 Kan. J. L. & Pub. Pol'y 58, 76, 85 (Fall 2010). Access barriers and segregation in the retail context create

social stigma and undermine feelings of self-worth and independence of persons with disabilities. *see* Stacey Menzel Baker, Jonna Holland and Carol Kaufman- Scarborough, <u>How Consumers with Disabilities Perceive "Welcome" in Retail Servicescapes: A Critical Incident Study</u>, 23 J. of Serv. Marketing 160, 167-168 (2007). They also cause people with disabilities to have a negative overall reaction to the whole retail environment, and to experience fear and discomfort in that environment. *see* Carol Kaufman-Scarborough, <u>Reasonable Access for Mobility-Disabled Persons is More Than Widening the Door</u>, 75 J. of Retailing 479, 483, 494 (1999). Studies confirm that the greater the perceptions of one's disabilities as a preventive factor in participation in the marketplace, the less satisfied one is with life. *see* Carol Kaufman-Scarborough and Stacey Menzel Baker, <u>Do People with Disabilities Believe the ADA Has Served Their Consumer Interests?</u>, 39 J. of Consumer Aff. 1, 24 (Summer 2005).

xi.  Plaintiff vehemently rejects the proposition that private enforcement of the ADA is not legitimate, regardless of the size of the business. Compliance with the ADA's physical accessibility standards requires business owners and other places of public accommodation to take proactive steps and, often, to incur costs. Unfortunately, here, the ADA's threat of injunctive relief was not sufficient to guarantee voluntary compliance. Defendant erroneously assumes that barrier removal is more expensive than it is, and underestimates the amount of new patronage that would result from making their businesses accessible.[1] An owner's assessment of the costs and benefits of accessibility may be skewed by prejudice against or stereotyping of

---

[1]  See also, Michael Ashley Stein, <u>The Law and Economics of Disability Accommodations</u>, 53 DUKE L.J. 79, 124–27 (2003).

people with disabilities, even if the prejudice or stereotyping is unconscious. *see* Samuel R. Bagenstos, <u>Subordination, Stigma, and "Disability,"</u> 86 VA. L. REV. 397, 423–24, 438–42. (2000). The ADA was not enough to convince defendant to comply with the law and the goal of this lawsuit is to see that they finally do.

31.    Access barriers at the Subject Property are being consciously ignored by the Defendants; the Defendants have knowingly disregarded the ongoing duty to remove the barriers in compliance with the ADA.

32.    Plaintiff alleges on information and belief that there are other ADA violations and unlawful architectural barriers at the Subject Property that relate to his mobility disability.

33.    Plaintiff hereby seeks to remediate and remove all barriers related to his disability, whether presently known or unknown. As the court held in <u>Doran v. 7-11. Inc.</u>, 506 F.3d 1191 (9th Cir. 2008):

> "[W]here a disabled person has Article III standing to bring a claim for injunctive relief under the ADA because of at least one alleged statutory violation of which he or she has knowledge and which deters access to, or full use and enjoyment of, a place of public accommodation, he or she may conduct discovery to determine what, if any, other barriers affecting his or her disability existed at the time he or she brought the claim. This list of barriers would then in total constitute the factual underpinnings of a single legal injury, namely, the failure to remove architectural barriers in violation of the ADA, which failure actually harmed the disabled person by deterring that disabled person from visiting a facility that otherwise would have been visited at a definite future time, yielding Article III standing."

34.    The violations and references to code sections herein are not all-inclusive. Plaintiff will amend this complaint to provide a complete description of the full scope of ADA violations after conducting a comprehensive expert site inspection. For the purposes of this Complaint, Plaintiff asserts that the

barriers alleged herein violate one or more of the ADA's implementing regulations.

35.   The ADA defines "disability" as a "physical or mental impairment," 42 U.S.C. § 12102(1)(A),[2] and a regulation issued by the Equal Employment Opportunity Commission (EEOC) defines "impairment" as: (1) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as [an enumerated list]; or (2) Any mental or psychological disorder, such as an intellectual disability (formerly termed "mental retardation"), organic brain syndrome, emotional or mental illness, and specific learning disabilities. 29 C.F.R. § 1630.2(h). The Court may wish to consider the EEOC's interpretation of this regulation through interpretative guidance it has issued. See Turtle Island Restoration Network v. U.S. Dep't of Commerce, 878 F.3d 725, 733 (9th Cir. 2017) (explaining that, under Auer v. Robbins, 519 U.S. 452, 461-62 (1997), courts "defer to an agency's interpretation of its own ambiguous regulations, which controls unless `plainly erroneous or inconsistent with the regulation,' or where there are grounds to believe that the interpretation `does not reflect the agency's fair and considered judgment of the matter in question'" (quoting Christopher v. SmithKline Beecham Corp., 567 U.S. 142, 155 (2012))). The court may also wish to consider the amicus brief the EEOC recently filed in Case No. 16-35205 before the U.S. Circuit Court for the Ninth Circuit, in which states that the formal position of the EEOC is that because morbid obesity is well outside the "'normal' range" of weight, it is

---

[2] Rather than listing all the disabilities covered, the ADA provides that a "disability" is a condition that fits into one or more of these categories: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). See Botosan v. Paul McNally Realty, 216 F.3d 827, 837 (9th Cir. 2000)("Congress chose not to give an exhaustive enumeration of impairments or disabling conditions because of the difficulty of compiling such a list and because new disorders would undoubtedly develop in the future.")(quoting H.R.Rep. No. 101-485(III) at 27, reprinted in 1990 U.S.C.C.A.N. 445, 449).

an impairment regardless of whether it was caused by a physiological disorder.<https://www.eeoc.gov/eeoc/litigation/briefs/burlington.html>. *see also* <u>Balvage v. Ryderwood Improvement & Serv. Ass'n</u>, 642 F.3d 765, 776 (9th Cir. 2011) ("[A]n agency's litigation position in an amicus brief is entitled to deference if there is no reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter." (quoting <u>Barrientos v. 1801-1825 Morton LLC</u>, 583 F.3d 1197, 1214 (9th Cir. 2009))).    The EEOC has concluded that obesity constitutes an impairment under the ADA under some but not all circumstances. According to the EEOC's interpretive guidance:

> It is important to distinguish between conditions that are impairments and physical, psychological, environmental, cultural, and economic characteristics that are not impairments. The definition of the term "impairment" does not include physical characteristics such as eye color, hair color, left-handedness, or height, weight, or muscle tone that are within "normal" range and are not the result of a physiological disorder. The definition, likewise, does not include characteristic predisposition to illness or disease. Other conditions, such as pregnancy, that are not the result of a physiological disorder are also not impairments.
>
> [. . .]
>
> The definition of an impairment also does not include common personality traits such as poor judgment or a quick temper where these are not symptoms of a mental or psychological disorder.
>
> 29 C.F.R. pt. 1630, app., § 1630.2(h)

36.    The EEOC takes the position that weight (1) is not an impairment when it is within the "normal" range and lacks a physiological cause but (2) may be an impairment when it is either outside the "normal" range or occurs as the

result of a physiological disorder. The EEOC has not defined "normal" range. However, scientific literature unambiguously show that morbid obesity entails far more serious health consequences than moderate obesity for patients. see Sturm, Roland, and Aiko Hattori. "Morbid obesity rates continue to rise rapidly in the United States." International journal of obesity 37.6 (2013): 889. The EEOC's position is consistent with a compliance manual it withdrew in 2012. In that manual, the EEOC took the position that "normal deviations in height, weight, or strength that are not the result of a physiological disorder are not impairments. . . . At extremes, however, such deviations may constitute impairments." EEOC Compliance Manual § 902.2(c)(5) (2012). In BNSF Railway Co. v. Feit, 281 P.3d 225 (Mont. 2012), the Montana Supreme Court interpreted the meaning of "impairment" under the Montana Human Rights Act, which defines "disability" as a "physical or mental impairment that substantially limits one or more of a person's major life activities." See id. at 228 (citing Mont. Code Ann. § 49-2-101(19)(a)). In the absence of state authority on the meaning of "impairment," Feit followed the EEOC's interpretive guidance to hold that "[o]besity that is not the symptom of a physiological disorder or condition" may constitute an impairment "if the individual's weight is outside `normal range' and affects `one or more body systems.'" Id. at 231. The Feit Court held that "[b]y using the conjunctive 'and,'" the EEOC definition of

impairment excludes weight only if it is both within a normal range and does not result from a physiological disorder. <u>Feit</u>, 365 Mont. at 363-64; see also Res. for Human Dev., Inc., 827 F. Supp. 2d at 694 ("A careful reading of the EEOC guidelines and the ADA reveals that the requirement for a physiological cause is only required when a charging party's weight is within the normal range. 29 C.F.R. § 1630.2(h). <u>Feit</u> is well reasoned and consistent with Congress' strong policy mandating liberal construction of the ADA. *see also* Merriam-Webster online dictionary (defining "Physiological" as "of or relating to physiology," "a branch of biology that deals with the functions and activities of life or of living matter (as organs, tissues, or cells) and of the physical and chemical phenomena involved," similar to anatomy"). Whether "morbid" or "extreme" obesity is related to one's biological functioning of the brain is at least a question of material fact. There is at minimum a fact question as to whether morbid obesity is a condition, a state of being or defective state of health.

**FIRST CAUSE OF ACTION**
**Discrimination Based on Disability**
**[42 U.S.C. § 12101, et seq]**
**By Plaintiff against all Defendants**

37.   Plaintiff re-alleges and incorporates by reference as though fully set forth herein the allegations contained in all prior paragraphs of this complaint.

38.   The ADA obligates owners, operators, lessees and lessors of public accommodations to ensure that the privileges, advantages, accommodations,

facilities, goods and services are offered fully and equally to persons with disabilities, including the Plaintiff and others similarly situated [42 U.S.C. § 12182(a)].

39. Discrimination is defined in the ADA, inter alia, as follows:

   i. A failure to remove architectural barriers where such removal is readily achievable [42 U.S.C. § 12182(b)(2)(A)(iv)]. Barriers are identified and described in the Americans with Disabilities Act Accessibility Guidelines (the "ADAAG") [28 C.F.R. Part 36, Appendix "D"];

   ii. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities [42 U.S.C. § 12183(a)(2)];

   iii. Where an entity can demonstrate that the removal of a barrier is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable [42 U.S.C. § 12182(b)(2)(A)(v)].

40. The ADA, the ADAAG's 1991 Standards (the "1991 Standards") and 2010 Standards (the "2010 Standards"), and the California Building Code (the "CBC") contain minimum standards that constitute legal requirements regarding accessibility at places of public accommodation.

41. The Defendants have failed to comply with minimum ADA standards and have discriminated against the Plaintiff on the basis of his mobility disability. Each of the barriers and accessibility violations set forth above is

readily achievable to remove, is the result of an alteration that was completed without meeting minimum ADA standards, or could be easily remediated by implementation of one or more available alternative accommodations. Accordingly, the Defendants have violated the ADA.

### Failure to Design and Construct an Accessible Facility

42. Plaintiff alleges on information and belief that the Subject Facility was designed and constructed (or both) after January 26, 1992 – independently triggering access requirements under Title III of the ADA.

43. The ADA also prohibits designing and constructing facilities for first occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

44. Here, Defendants violated the ADA by designing and constructing (or both) the Facility in a manner that was not readily accessible to the physically disabled public – including Plaintiff – when it was structurally practical to do so.

### Failure to Make an Altered Facility Accessible

45. Plaintiff alleges on information and belief that the Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

46. The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id. Here,

Defendants altered the Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

47.    The Defendants are obligated to maintain in operable working condition those features of the Subject Property's facilities and equipment that are required to be readily accessible to and usable by Plaintiff and similarly situated persons with disabilities [28 C.F.R. § 36.211(a)]. The Defendants failure to ensure that accessible facilities at the Subject Property were available and ready to be used by the Plaintiff violates the ADA.

48.    The Defendants have a duty to remove architectural barriers where readily achievable, to make alterations that are consistent with minimum ADA standards and to provide alternative accommodations where necessary to provide access. The Defendants benign neglect of these duties, together with their general apathy and indifference, violations the ADA.

49.    The Defendants wrongful conduct is continuing in that Defendants continue to deny full, fair and equal access to their business establishment and full, fair and equal accommodations, advantages, facilities, privileges and services to Plaintiff as a disabled person due to Plaintiff's disability. The foregoing conduct constitutes unlawful discrimination against the Plaintiff and other mobility disabled persons who, like the Plaintiff, will benefit from an order that the Defendants remove barriers and improve access by complying with minimum ADA standards.

**SECOND CAUSE OF ACTION**
**Violations of the Unruh Rights Act**
**[Cal. Civil Code§ 51, et seq.]**
**By Plaintiff against all Defendants**

50.    Plaintiff re-alleges and incorporates by reference as though fully set forth herein the allegations contained in all prior paragraphs of this complaint.

51.     The foregoing violations of the ADA constitute per se violations of the Unruh Act [Cal. Civil Code§ 51(f)].

52.     Plaintiff is entitled to statutory damages because he was denied full and equal access to the Subject Property, because he personally encountered access barriers at the Subject Property that discriminated against him on the basis of his mobility disability, because he was deterred from accessing the Subject Property, and because the violations caused him difficulty, discomfort or embarrassment [Cal. Civil Code §§ 52 and 55.56].

53.     Plaintiff was denied full and equal access to the Subject Property because he personally encountered ADA violations on a particular occasion.

54.     Plaintiff is currently deterred from accessing the Subject Property on occasions due to his actual knowledge of ADA violations that cause unnecessarily difficulties. His actual knowledge reasonably dissuaded him from accessing the Subject Property, which he intended to use on particular occasions and because the violations would have actually denied Plaintiff full and equal access if he had accessed the Subject Property on those particular occasions.

55.     Due to the intentional unlawful discrimination set forth above, Plaintiff has been denied the right and entitlement to full and equal accommodations, advantages, facilities, privileges or services at the Subject Property in violation of the Unruh Act.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays this Court award damages and provide relief as follows:

1.     For injunctive relief compelling the Defendants to comply with the ADA and the Unruh Act.

2.     For damages under the Unruh Act, which provides for actual damages or statutory damages of $4,000 per incident of discrimination; and

3.      For punitive damages under the Unruh act, which provides for exemplary damages per incident of willful discrimination. Cal. Civil Code § 52(b)(1).

4.      For reasonable attorney's fees (counsel will be retained in due course), litigation expenses and costs of suit pursuant to 42 U.S.C. § 12205 and Cal. Civil Code § 52.


Dated this December 27, 2018.


JOSE VELEZ
PLAINTIFF
IN PROPRIA PERSONA

FROM:         JOSE VELEZ

TO:                    Office of the Clerk U.S. District Court
                       Central District of California

Re:                    New Civil Action (In Propria Persona)

---

DEAR CLERK OF THE COURT:

PLEASE FIND ENCLOSED

- **Summons**:  ORIGINAL plus two copies

- **Civil Cover Sheet**:  Original Plus two Copies

- **Certificate and Notice of Interested Parties**: Original plus THREE copies.

- **Complaint**:  original plus ONE copy.

    - NOTE:  NO NEED TO SEND ME A COPY. UPLOAD THE COMPLAINT AND I WILL OBTAIN A COPY ON PACER. THANK YOU.

- $400 FILING FEE:  MONEY ORDER.

PRESS FIRMLY TO SEAL

TO SEAL

PRIORITY MAIL LEGAL
SIZE POSTAGE REQUIRED



RIORITY
MAIL ★

ATE OF DELIVERY SPECIFIED*

SPS TRACKING™ INCLUDED*

SURANCE INCLUDED*

CKUP AVAILABLE

omestic only

UNITED STATES
POSTAL SERVICE®

USPS TRACKING #



9014 9645 1645 7073 55



01000060

Legal Flat Rate Envelope
EP14L February 2014
OD: 15 x 9.5



PRIORITY
★ MAIL ★

FRO

FROM:

JOSE VELEZ
3936 S SEMORAN BLVD #317
ORLANDO, FL 32822-4015



UNITED STATES
POSTAL SERVICE®

VISIT US AT USPS.COM*
ORDER FREE SUPPLIES ONLINE

Stamps

RECEIVED
CLERK, U.S. DISTRICT COURT

TO:

DEC 3 1 2018

CENTRAL DISTRICT OF CALIF.
BY                    DEP.

Clerk of the Court
U.S. District Court
Central District of California
(Western Division)
255 East Temple St, Suite 180
Los Angeles, CA 90012

Label 228, March 2016          FOR DOMESTIC AND INTERNATIONAL USE

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

UNITED STATES
POSTAL SERVICE®

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP14L © U.S. Postal Service; February 2014; All rights reserved.